LAUVALE FAMILY of Fagatogo, Plaintiff

v.

PAUESE & FIAMAUA of Fagatogo, Defendants

No. 22-1949

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Matapuga" in Fagatogo]

July 27, 1949

A. A. MORROW, *Chief Justice;* MALEPEAI and MULI, *District Judges.*

DECISION

Heard at Fagatogo July 13, 1949.

Fiapapalagi & Meauta for Lauvale Family; Lutu for Pauese & Fiamaua.

MORROW, *Chief Justice.*

Pauese and Fiamaua of Fagatogo filed their application to have the land Matapuga in the village of Fagatogo registered as their individually owned property. Fiapapalagi acting in behalf of the Lauvale Family filed an objection to the proposed registration claiming that the land was the communal family property of that family. Hence this litigation. See Sec. 905 of the A. S. Code. A survey of the land was filed with the application. Prior to the hearing the court viewed the land in the presence of the parties.

There are two dwelling houses on Matapuga, one on the northeast corner of the tract occupied by Matauaga (the wife of Pinati), her young children and Fiamaua, the other (including a palagi style cook house adjoining it) on the northwest corner occupied by Fiapapalagi and her husband and children. At the hearing Pauese and Fiamaua

493

abandoned their claim that Matapuga was their own individually owned property and informed the court that it was the communal family land of the Lutu title. Both Fiamaua and Pinati are members of the Lutu family. Back of the houses and cook house is a cemetery in which are buried many members of the Lutu family and Lauvale who, according to some evidence, was a member of the Lutu family.

A presumption of ownership arises from the fact of possession of real property. "A presumption of ownership or title is derived from the possession of real property, the probative weight or force thereof being dependent upon the duration of the possessor's tenure. The universal favor which this presumption enjoys is evidenced by legislative recognition in substantially all jurisdictions. Such recognition takes the form of express enactments, statutes of limitation, and the innumerable procedural statutes for establishment of title by adverse possession, and the like." 1 Jones on Evidence (4th Ed.) Sec. 75. The evidence shows without a doubt that that part of the surveyed land where Fiapapalagi's house and cook house stand has been occupied and used by members of the Lauvale family for at least 24 years if not longer. A number of houses have stood on the spot where the present house stands and all of them were occupied by members of the Lauvale family. The possession of this part of the tract by members of the Lauvale family has been actual, open, notorious, exclusive, continuous and under a claim of title during the 24 years. Under these circumstances any claim that any other person or persons may have had to that part has been outlawed through the operation of the statute of limitations. *Maxwell Land Grant Co. v. Dawson*, 151 U.S. 586, 607; *Vaimaona v. Mulitauaopele S.*, No. 58-1947 (Am. Samoa); *Puailoa v. Leapaga*, No. 64-1948 (Am. Samoa); *Gi & Teo v. Taetafea, John Poti, Faalanu*, No. 88-1948 (Am. Sa-

moa). The effect of the operation of the statute of limitations is to vest title to the property involved in the adverse possessor. *Maxwell Land Grant Co. v. Dawson,* supra. We conclude and hold that that part of the surveyed tract on which the house now occupied by Fiapapalagi and her family and their palagi style cook house stand together with that part of the land adjacent to the house and cook house and used in connection therewith for more than 20 years is the communal family land of the Lauvale family.

There have been a number of houses on the spot where the house now occupied by Matauaga and her young children and Fiamaua stands. All of them have been occupied and used by members of the Lutu family extending back over a period of more than 20 years. The present house was built by Pinati, Matauaga's husband. Fiamaua is a member of the Lutu family, being the daughter of Siausagi who was the daughter of Lutu Samuelu. Matauaga testified that when she moved on to the land that "only an old woman Siausagi and children were living there." Fiamaua who is 41 years of age testified that she was born where she is now living, and that she has lived there most of her life. When Fiapapalagi was on the witness stand and testifying with regard to Pinati she was asked "You say he has lived there, ever since he was born?" (meaning the place where Matauaga and Fiamaua now live) to which she answered "Yes." She was then asked "Is Pinati a member of the Lutu family like Fiamaua?" to which she answered "Yes." Another time she was asked "Is Pinati a member of the Lutu family?" to which she answered "Yes he is a member of the Lutu family because he is the oldest son of Siausagi." Later she corrected this last statement by saying that Siausagi was the mother of Pinati's father. On cross examination Fiapapalagi admitted that Lauvale was a member of the Lutu family.

It is our conclusion from the admitted fact that so many

Lutu people are buried on the disputed tract and the further fact that the house on the northeast corner of the tract (including its predecessor, a Samoan house, which stood on the same spot) has been occupied and used by members of the Lutu family for many years, certainly more than 20, that all of the surveyed tract is the communal family property of the Lutu title except the part thereof on which the house and the palagi style cook house occupied by Fiapapalagi and family stand together with the adjacent land used by them in connection with such house and cook house. Inasmuch as Pinati built the house on the northeast corner of the disputed land and his wife Matauaga, and their blood children are occupying it along with Fiamaua it follows under Samoan custom that he and his wife and blood children and Fiamaua have the right to continue to occupy it. They are members of the Lutu family.

None of the surveyed land may be registered at the present time because the point of departure in the survey is neither tied in with an established naval coordinate nor is it a concrete monument. Sec. 905 of the Code provides that "when land is offered for registration, the offer shall be accompanied by a survey of the land proposed to be registered. The point of departure in such survey shall be either (a) tied in with an established naval coordinate or (b) be a concrete monument procured from or poured in place by the Public Works Department for that purpose and set at least three feet in the ground at a corner of the land."

When surveys have been submitted to the Registrar of Titles complying with Sec. 905 of the Code and properly describing by metes and bounds the parts of the surveyed tract herein determined to be the communal family land of the Lutu and the Lauvale titles respectively, an appropriate decree directing registration will be entered.

Costs in the amount of $12.50 are hereby assessed against Pauese, a like amount against Fiamaua and a like

amount against Fiapapalagi. Costs are to be paid within 30 days.